MARCELLUS and MAMIE STOKES v. IVORY STOKES.

Western Section.    December 14, 1927.

No petition for Certiorari was filed.

1. **Appeal and error. Bill of exceptions. Bill of exceptions must be authenticated by the judge who conducted the trial.**
   The office of the bill of exceptions is to put in permanent form and bring into the record that which transpires during the trial of the cause, and which is no part of the record proper. In order to make extraneous matters a part of the record they must be examined by the trial judge and authenticated by his signature in such manner as to make their identity certain.

2. **Appeal and error. Where the bill of exceptions is not authenticated and there are no assignments of error upon the technical record, the appeal must be dismissed.**
   Where the purported bill of exceptions filed in the appellate court was not authenticated by the trial court, and there were no assignments of error upon the technical record, held that the appeal must be dismissed.

Appeal from Probate Court, Shelby County; Hon. F. M. Guthrie, Judge.

Affirmed.

Bell and Bell, of Memphis, for appellant.

W. L. Terry, of Memphis, for appellee.

OWEN, J.    This transcript is before us on a writ of error. Complainants, Marcellus Stokes and Mamie Stokes have filed assignments of error to a decree rendered in the probate court of Shelby county dismissing their petition. Marcellus Stokes and Mamie Stokes, petitioners, or the complainants are brother and sister of one Claude Stokes deceased. Claude Stokes died intestate in Shelby county, Tennessee, in 1919. A petition was filed by Laura Stokes, claiming to be his widow, and asking that letters of administration be issued to her. It appears that the only property that Claude Stokes had was a war risk insurance policy issued by the United States government on the life of deceased, in the sum of $5,000. The payment of this war risk insurance certificate was made in monthly installments. Laura Stokes as the widow of Claude Stokes collected from the Government monthly installments of said policy up until the first day

of January, 1926, collecting about $1500 from the time she qualified as administratrix until the early part of 1927.

On the 30th day of March, 1926, Ivory Stokes Jackson filed her petition in the probate court of Shelby county, Tennessee, seeking a removal of Laura Stokes as administratrix and praying to be pointed administratrix of the estate of Claude Stokes in the room and stead of said Laura Stokes. The grounds of said petition of Ivory Stokes Jackson was that she was the true and lawful wife of Claude Stokes at the time of his death; that she was his widow and that Claude Stokes had entered into a bigamous marriage with Laura Stokes. Ivory Stokes Jackson's petition was sustained and she was appointed administratrix in the room and stead of Laura Stokes who was removed.

Shortly after her removal as administratrix, Laura Stokes filed a petition against the United States of America in the United States District Court at Memphis, Tennessee. She set up her marriage to Claude Stokes, which occurred on the 6th day of June 1917; that she continued as his wife until his death March 31, 1919; that on the 9th day of November, 1917 petitioner's husband Claude Stokes was called to the service of the United States; that he made an allotment to her in the sum of $30 per month, which she drew while he was in the United States service; that on December 22, 1917 an insurance certificate was granted on the life of Claude Stokes, payable to his wife and son George Stokes; that Claude Stokes never had any son by the name of George or any children or bodily heir. She set up that she had been removed as administratrix but insisted that she was the legal wife of Claude Stokes and was the beneficiary in his said insurance certificate and was entitled to receive the same.

To this petition the United States filed a bill of interpleader and asked that it be determined to whom the government should pay said insurance money—whether to Laura Stokes and George Stokes or to Ivory Stokes Jackson, it appearing that Ivory Stokes had intermarried with one Sam Jackson some years after the death of Claude Stokes. Ivory Stokes Jackson answered the bill of interpleader. A guardian adlitem was appointed for George Stokes; publication was had as to him, but it appears that his name was a fictitious one and there is no such person.

The United States Government's bill of interpleader was sustained and the court held that Ivory Stokes Jackson was the widow of Claude Stokes, the soldier insured, and is the administratrix of his estate, duly appointed by the probate court of Shelby county, and as such administratrix is entitled to his war risk insurance, which is now due and owing from the government of the United States.

It was ordered that in case there was no appeal that, after deducting certain costs and attorney's fees, the clerk pay over the said sum of $3473 to the administratrix. There was no appeal from this. It

is insisted that both Laura Stokes and Ivory Lee Stokes Jackson made exceptions to this decree, Laura Stokes excepting to the decree in holding that she was not the wife of Claude Stokes and Ivory Stokes Jackson excepted to the finding of facts wherein the District Judge found that Ivory Stokes Jackson who was living in adultery with one Archie Lee Shanklin at the time that Claude Stokes was inducted into the service of the United States and up to and after the time of the death of Claude Stokes.

After the disposition of the case in the Federal court, Marcellus Stokes and Mamie Stokes, brother and sister of Claude Stokes, and sole heirs-at-law of Claude Stokes, as alleged in their petition, sought to have Ivory Stokes Jackson removed as administratrix because she had forfeited all rights as a wife and all rights as a widow by reason of the findings of fact as to her conduct, as announced by Judge Harry B. Anderson in the case disposed of in the Federal court. The judge of the probate court of Shelby county denied the petition to remove Ivory Stokes Jackson, but continued the hearing to a future day as to whether the estate belonged to Ivory Stokes Jackson or to Marcellus Stokes and Mamie Stokes, brother and sister of Claude Stokes, deceased.

It appears that the cause came on to be heard on oral testimony in open court upon the question as to who was entitled to the fund that the government had paid over as insurance on the life of Claude Stokes sometime in April or May, 1927. On May 31, 1927, Judge F. M. Guthrie filed an opinion in which he held, among other things, that the complainants had not made out their charges by a preponderance of the evidence, and for other reasons the petition of Marcellus and Mamie Stokes was dismissed. This written opinion filed May 31, 1927 was made the decree of the court (verbatim) on June 22, 1927. Petitioners Marcellus and Mamie Stokes excepted to the decree dismissing their petition, prayed and were granted an appeal to this court, but did not perfect the same, and hence the record was filed for error.

Numerous assignments of error have been made upon the holding of the court.

It is insisted that the judgment dismissing complainant's petition should be reversed. The first insistence is that by a preponderance of the evidence Ivory Stokes Jackson is not entitled to this war risk insurance by reason of the act authorizing the establishment of the Bureau of War Risk Insurance in the Treasury Department, passed and approved October 6, 1917, where by section 22 it is provided that the open and notorious, illicit co-habitation of a widow who is a claimant shall operate to terminate her right to compensation or insurance, and that the rights of Ivory Stokes Jackson have been fixed by the decree of the United States District Court when it so held

as a matter of fact that she was guilty of unfaithfulness to her marital vows with Claude Stokes.

We are precluded from passing upon the assignments of error for the reason that there is no valid bill of exceptions in the transcript. On page 37 of the record there is, at the top of the page, the following: "In the probate court, of Shelby county, Tennessee. In re: estate of Claude Stokes, deceased, Ivory Stokes Jackson, admx., No. 24903. Bills of Exceptions." Then follows the testimony in narrative form, of a great number of witnesses for petitioners and for defendant. Numerous exhibits consisting of letters and the proceedings had in the Federal court. On a page not numbered, between pages 92 and 93 of the record, we find the following: "Here the petitioners rested," this being found at the top of the page. Then follows what purports to be a statement of the evidence or testimony of Henry Stokes in surrebuttal. Following this Archie Lee Shanklin being recalled, testified for the defendant. Following this is the statement "This was all the evidence in the case." Following this is the opinion of the court and later the final decree, appeal bond and certificate of the clerk. The decree does not provide for the filing of a bill of exceptions. It doesn't appear that any of the exhibits to the transcript were ever filed in the lower court, or what purports to be a bill of exceptions was ever signed by the trial judge or filed in the lower court.

In Darden v. Williams, 100 Tenn., page 414, it was held that a bill of exceptions must be authenticated by the judge who conducted the trial.

In Cobble, admr. v. International Agricultural Corporation, 2 Tenn. App., 358, it was held, "the office of the bill of exceptions is to put in permanent form and bring into the record that which transpires during the trial of the cause, and which is no part of the record proper. In order to make extraneous matters a part of the record they must be examined by the trial judge and authenticated by his signature in such manner as to make their identity certain. Battier v. State, 114 Tenn., 563, 86 S. W., 711; Railway & Light Co. v. Marlin, 117 Tenn., 698, 99 S. W., 368.

It is the province of a bill of exceptions to make the evidence used in the trial of the cause a part of the record in the case appealed, or they must be preserved by bill of exceptions. , If not, they will not be considered. Shelby v. Bickford, 102 Tenn., 395; 52 S. W., 772.

It is the duty of the trial judge in signing the bill of exceptions to identify by his signature or in some other unmistakable form the charge of the court, the special requests, the written exhibits to various oral testimony, and thus make them a part of the bill of exceptions by proper endorsement, or else he must see that they are embodied in the bill of exceptions and thus leave nothing open to

conjecture on the record. Ward v. State, 102 Tenn., 724, 52 S. W., 996.

There are no assignments of error upon the technical record. To consider any of the assignments of error, there must be a proper bill of exceptions.

It results that the writ of error is dismissed and the judgment of the lower court is affirmed. The petitioners for writ of error will pay the costs of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.